**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

3M COMPANY, Civil No. 03-2651 (JRT/FLN)

Plaintiff,

v.

**MEMORANDUM OPINION AND ORDER**

INTERTAPE POLYMER GROUP, INC., CENTRAL PRODUCTS COMPANY, and INTERTAPE POLYMER CORPORATION,

Defendants.

---

Daniel J. Brown and Thomas W. Tinkham, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402, and Louis T. Pirkey, Timothy M. Kenny, and William G. Barber, **FULBRIGHT & JAWORSKI**, 600 Congress Avenue, Suite 2400, Austin, TX 78701, for plaintiff.

Lindsay G. Arthur, Jr. and Thomas A. Forker, **ARTHUR CHAPMAN KETTERING SMETAK & PIKALA, PA**, 81 South Ninth Street, Suite 500, Minneapolis, MN 55402, and Scott A. King and Victoria L. Nilles, **THOMPSON HINE LLP**, P.O. Box 8801, Dayton, OH 45401, for defendants.

## INTRODUCTION

Plaintiff 3M Company ("3M") has a registered trademark on the color blue used on its painter's tape. 3M alleges that defendants have infringed its trademarked blue color, and asserts claims for trademark infringement under 15 U.S.C. § 1114 and

Minnesota common law, unfair competition under 15 U.S.C. § 1125(a), dilution under 15 U.S.C. § 1115(c) and Minn. Stat. § 333.285, and unjust enrichment.

Defendants Intertape Polymer Group, Inc., Intertape Polymer Corp., and Central Products Company, (collectively referred to as "IPG" or defendants) sell competing blue painter's tape. Defendants raise affirmative defenses to 3M's lawsuit, arguing that 3M procured its trademark through fraud on the Patent & Trademark Office ("PTO"), and that the color blue is "functional," thus making it not protectible by trademark. Central Products Co. ("CPC") also asserts a counterclaim against 3M, seeking attorneys' fees and costs under 15 U.S.C. § 1120.

Defendants move for summary judgment on all of 3M's claims. 3M moves for summary judgment on the affirmative defenses of functionality and fraud, and on CPC's counterclaim. As explained fully below, the Court grants in part and denies in part the motions.

## BACKGROUND

3M began selling blue tape in 1987. At the time, 3M's tape was unique because it could be left in place for up to seven days without suffering damage from ultra-violet light, and could thus be easily removed. 3M introduced its new tape nationally in August 1988. 3M claims that it decided to sell its new tape in the color blue so that it would be easily distinguished from other tapes on the market.

In 1989, 3M became aware that another company, Shurtape, had developed a competing product to its blue painter's tape. The Shurtape product was darker blue in

color than 3M's tape, and provided only three days UV-resistance. Defendants began to sell the blue tape that is at issue in this lawsuit in 1990.[1] Between 1990 and 1997, ten companies sold blue painter's tape.

3M filed an application to register the color Blue Mark for its tape in August 1997. On July 28, 1998, the PTO issued to 3M U.S. Trademark Registration No. 2,176,916, for the mark consisting of "blue as applied to the entirety of the goods." Shortly thereafter, 3M filed a lawsuit against Shurtape and another competitor, Manco, both of which ultimately settled.

In 1999, representatives from defendants and 3M met to negotiate a supply contract. At that meeting, 3M handed a copy of its blue tape trademark registration to defendants. 3M filed this lawsuit against defendants on August 6, 2003.

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate in the absence of any genuine issue of material fact, and when the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view all of the

[1] The tape was initially marketed by defendants' predecessors, Anchor Continental and American Tape Company.

facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. *See, e.g.*, *Anderson*, 477 U.S. at 256; *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995); *Ring v. Sears, Roebuck & Co.*, 250 F. Supp. 2d 1130, 1138 (D. Minn. 2003).

## II. FRAUD ON THE PTO

Plaintiffs seek summary judgment on defendants' asserted affirmative defense that trademark protection should be removed because 3M procured the trademark through fraud in its application to the Patent and Trademark Office. Essentially, defendants argue that 3M's statements in its trademark application that 3M had "substantially exclusive" use of blue tape, when it knew that ten other companies were also selling blue tape, was material and false.

A petition to cancel a registration may be made at any time if the registered mark was obtained by fraud. 15 U.S.C. § 1064(3). "Fraud in procuring a mark occurs when an applicant knowingly makes false, material representations of fact in connection with an application." *L.D. Kichler Co. v. Davoil, Inc.*, 192 F.3d 1349, 1351 (Fed. Cir. 1999). A claim of fraudulent procurement has two elements: false, material misrepresentations of fact; and that such statements were knowingly made with the intent to deceive. *Id.* at 1352. The party seeking cancellation for fraudulent procurement "must prove the alleged

fraud by clear and convincing evidence." *Id.* at 1351. Further, because the oath required by a trademark applicant is phrased in terms of a subjective belief, it is a defense to a claim of fraudulent procurement that the affiant had an honestly held, good faith belief that the statements in the oath were true. *Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp.*, 148 F.3d 417, 420 (4th Cir. 1998) (citing 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31:76, p. 31-116 to 117 (4th ed. 1998)); *see also Marshak v. Treadwell*, 240 F.3d 184, 196 (3d Cir. 2001) (finding district court's instruction that fraudulent procurement may be proven if registrant "knew or reasonably should have known" of misrepresentation was error). A party making a claim of fraud on the PTO is under a "heavy burden." *Marshall Field & Co. v. Mrs. Fields Cookies*, 25 U.S.P.Q.2d 1321, 1328 (P.T.O. T.T.A.B. 1992).

In *Marshall Field*, the PTO Trademark Trial and Appeal Board (the "Board") addressed the respondent's contention that the petitioner had committed fraud on the PTO by stating it had "substantially exclusive" use of the mark, when it was aware that eleven other third-parties were also using the mark.[2] The Board noted that the burden of proof is on the party asserting fraud to show that, at the time the declaration was made, "no reasonable person could knowingly state" that it had "substantially exclusive" use of the mark. The Board concluded that the respondent had failed that burden and dismissed the

[2] Although the Court is not bound by the decisions of the Board, the Court finds the Board's decision in *Marshall Field* provides useful analysis for the Court to consider in this case. *See Courtenay Commc'ns Corp. v. Hall*, 334 F.3d 210, 216 (2d Cir. 2003) ("As we have noted on many occasions, the decisions of the TTAB, while not binding on courts within this Circuit, are nonetheless to be accorded great weight.") (internal quotations, brackets, and ellipsis omitted).

counterclaim. In reaching that determination, the Board noted that the respondent's evidence in support of its fraud counterclaim was limited to its assertion that the petitioner "knew or should have known" of the ten other users.

Even assuming that 3M's statements to the PTO were materially false, the Court finds that defendants have not asserted sufficient facts supporting a finding that 3M acted with the fraudulent intent. Here, as in *Marshall Field's*, defendants' evidence in support of their claim that 3M had the intent to deceive is limited to their assertion that 3M knew or should have known that its statement to the PTO that it had "substantially exclusive" use of the blue tape mark was false.[3] In *Marshall Field*, the respondent based its fraud claim on its allegation that the petitioner knew or should have known that there were eleven other users of the mark when it claimed to have "substantially exclusive" use. Similarly, defendants in this case base their fraud claim on their allegation that 3M knew or should have known that there were ten other users of the blue tape mark. Further, 3M has offered evidence tending to show that it had between 85-93% market share during the relevant time period. As the party asserting fraud, the burden is on defendants to show that "no reasonable person" could have claimed that 3M had "substantially exclusive" use of blue tape. The Court finds that defendants have not met that burden. Merely claiming that 3M knew or should have known that it had 85-93% market share is insufficient to show that 3M intentionally deceived the PTO when it stated it had "substantially

---

[3] Defendants, citing *Nelson v. Adams*, 388 N.W.2d 840, 845 (Neb. 1986), contend that they are entitled to an inference that 3M intended to deceive the PTO based on that allegation. *Nelson* is inapposite, as it does not concern a trademark action, but rather the tort of deceit under Nebraska law.

exclusive" use of the blue mark. Accordingly, the Court grants 3M's motion for summary judgment on defendants' affirmative defense of fraud on the PTO.

## III. FUNCTIONALITY

Functional product features may not be protected by trademark, and plaintiff has moved for summary judgment on defendants' affirmative defense that the trademark at issue is invalid due to functionality. *Qualitex v. Jacobsen Prods. Co*., 514 U.S. 159, 164 (1995). A product feature is functional "if it is essential to the use or purpose of the article or if it affects the costs or quality of the article, that is if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage." *Id.* (internal quotations omitted). Functionality is a question of fact that must be determined in light of the totality of circumstances. *Brunswick Corp. v. British Seagull Ltd.*, 35 F.3d 1527, 1530 (Fed. Cir. 1994).

Color alone may meet the basic legal requirements for use as a trademark, by acting as a symbol that distinguishes a firm's goods and identifies their source, without serving any other significant function. *Qualitex*, 514 U.S. at 165. In addition, a color code that has useful qualities may nonetheless be entitled to trademark protection, unless the costs to competition of precluding competitors from using the color are too high. *Fabrication Enters., Inc. v. Hygenic Corp.*, 64 F.3d 53, 58 (2d Cir. 1995). However, the use of color on a given product may also serve utilitarian purposes that affect competition, rendering the color functional. *See Brunswick*, 35 F.3d at 1533 (boat motor manufacturer not entitled to trademark protection for color black on boat motors because

black was more compatible with many colors and it made the motor look smaller); *Deere & Co. v. Farmland, Inc.*, 560 F. Supp. 85 (S.D. Iowa 1982) (farm machinery manufacturer not entitled to trademark protection for color green because customers want their farm machinery to match).

Because 3M's trademark on the color blue has already been approved for registration, it must be presumed that 3M's mark is nonfunctional. *See Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 869 (8th Cir. 1994). Thus, to succeed on the issue of functionality, defendants must present evidence to rebut this presumption. *Id.*

The Court finds that there are genuine issues of material fact on the issue of functionality. First, defendants have offered evidence tending to show that the color blue affects the UV-resistance of the tape, which 3M disputes. However, if the color blue does in fact affect the UV-resistance of the tape, then the color blue may serve utilitarian purposes that affect competition, rendering the color functional and not protectible. *See Brunswick*, 35 F.3d at 1533. The factual question whether the color blue affects the UV-resistance of the tape is material and that must be resolved by a jury.

Second, defendants have offered evidence tending to show that the color blue is functional because it is part of a color code, and that the costs of precluding defendants and other competitors from using the color blue are too high. Although a color or color code that contributes to the function of the product is not per se functional, it becomes functional and not protectible when the costs to competition of precluding competitors from using the color are too high. *See Brunswick*, 35 F.3d at 1533. Therefore, whether the color blue is functional here depends, at least in part, on the existence of an industry-

wide color code, and the magnitude of the costs to competition if competitors are precluded from using it. These are genuine issues of material fact.

## IV. SECONDARY MEANING

Defendants move for summary judgment on all of 3M's claims, arguing that 3M's trademark on the color blue is invalid because 3M cannot show that it has secondary meaning. Color marks can never be inherently distinctive, and therefore may only become distinctive and protectible if they acquire secondary meaning. *See Qualitex*, 514 U.S. at 162-163. "In order to establish secondary meaning, the user of a mark must show that by long and exclusive use in the sale of the user's goods, the mark has become so associated in the public mind with such goods that the mark serves to identify the source of the goods and to distinguish them from those of others." *Aromatique*, 28 F.3d at 870 (citing *Co-Rect Prods., Inc. v. Marvy! Advertising Photography, Inc.*, 780 F.2d 1324, 1330 (8th Cir. 1985)). Several factors may be relevant to determine whether a mark has secondary meaning, including consumer confusion, consumer surveys, advertising, amount of sales, and anecdotal evidence of consumer identification. *See Stuart Hall Co., v. Ampad Corp.*, 51 F.3d 780, 789 (8th Cir. 1995). Whether a mark has secondary meaning is a question of fact, not usually suited for determination on summary judgment. *See First Bank v. First Bank System, Inc.*, 84 F.3d 1040, 1046 (8th Cir. 1996); *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 978 (10th Cir. 2002).

Because 3M's trademark on the color blue has already been approved for registration, it must be presumed that 3M's mark is distinctive, such that it has acquired

secondary meaning. *See Aromatique, Inc.*, 28 F.3d 869. Thus, to succeed on the issue of functionality, defendants must present evidence to rebut this presumption. *Id.*

Defendants have presented to the Court evidence, in the form of expert testimony, consumer surveys, and advertising, tending to show that the color blue has not become so associated in the public mind with 3M's tape, and that it does not identify 3M as the source of the blue tape. 3M counters with similar forms of conflicting evidence. The Court finds that there are genuine issues of material fact on the issue of secondary meaning.

## V. DILUTION, UNFAIR COMPETITITON AND UNJUST ENRICHMENT

Defendants also seek summary judgment on 3M's claims for dilution, unfair competition and unjust enrichment, apparently relying on the same arguments they made in support of their motion for summary judgment on 3M's claims of trademark infringement. Claims of dilution and unfair competition have similar elements as a claim of trademark infringement; notably, all three claims require a showing that the mark is distinctive.[4] *Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 832 (8th Cir. 1999) (dilution); *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472-73 (3d Cir. 1994) (unfair competition).

As set forth above with respect to 3M's trademark infringement claim, the Court finds that there are genuine issues of material fact on the issue of whether the color blue mark has acquired distinctiveness through secondary meaning. These genuine issues of

[4] 3M asserts that its unjust enrichment is related to its trademark infringement claim, and similarly depends, in part, on whether 3M's blue tape mark is distinctive.

material fact on the issue of secondary meaning also preclude summary judgment on 3M's related claims of dilution, unfair competition, and unjust enrichment. Accordingly, the Court denies defendants' motion on these claims.

## VI. ESTOPPEL BY ACQUIESCENCE

Defendants argue that 3M should be estopped from bringing this action because 3M acquiesced in defendants' marketing of their competing blue tape. Generally, an infringement action may be barred by the doctrine of estoppel by acquiescence where the owner of the trademark, by conveying to the defendant through affirmative word or deed, expressly or impliedly consents to the infringement. *Minnesota Mining & Manufacturing Co v. Shurtape Technologies, Inc.*, 2001 WL 530551 (D. Minn. May 17, 2001) ("*Shurtape*"), 2001 WL 530551, at *7-8 (citing 5 *McCarthy* § 31.14; *U.S. Jaycees v. Cedar Rapids Jaycees*, 794 F.2d 379, 381-82 (8th Cir. 1986)).

The Court finds that there are genuine issues of material fact on the issue of estoppel by acquiescence because there is conflicting evidence as to whether 3M conveyed to defendants that it consented to their marketing of blue tape. For example, defendants assert that 3M handed a copy of its trademark registration to defendants for "informational purposes" only, and gave no indication that 3M wanted defendants to stop marketing their blue tape. Defendants assert that they relied on 3M's conduct at that meeting and continued to market their blue tape. 3M disputes defendants' characterization of the 1999 meeting, claiming that it handed a copy of its registration to defendants not for informational purposes, but rather to put them on notice that 3M might

sue if defendants did not stop manufacturing their tape. The Court denies defendants' motion for summary judgment on its defense of estoppel by acquiescence.

## VII. LACHES

Defendants argue that 3M's claim are barred by laches. Laches is an equitable defense to an action to enforce a trademark. *Shurtape*, 2001 WL 530551, at *6 (citing *Hubbard Feeds v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999)). "Laches applies when a claimant inexcusably delays in asserting its claim and thereby unduly prejudices the party against whom the claim ultimately is asserted." *Id.* To prevail on its laches defense, defendants must demonstrate by a preponderance of the evidence that 3M inexcusably delayed in asserting its trademark and that they suffered undue prejudice because of that delay. *See Shurtape*, 2001 WL 530551, at *6; *Azalea Fleet v. Dreyfus Supply & Mach. Corp.*, 782 F.2d 1455, 1458 (8th Cir. 1986). Delay in bringing suit may be excused under the "progressive encroachment" doctrine, which applies when a defendant begins use of a trademark in the market, and then directs its marketing or manufacturing efforts such that it is placed more squarely in competition with the plaintiff. *Shurtape*, 2001 WL 530551, at *6 (citing *Kason Indus. v. Component Hardware Group, Inc.*, 120 F.3d 1199, 1205 (11th Cir. 1997)).

The Court finds that there are genuine issues of material fact on the defense of laches. First, although it is undisputed that defendants' predecessors were marketing a blue painter's tape as early as 1990, there is conflicting evidence as to the magnitude and extent of competition between 3M's blue tape and defendants' blue tape, and whether

defendants "progressively encroached" on 3M's blue tape by directing their marketing or manufacturing efforts to place their tape "more squarely in competition" with 3M's blue tape. *See Shurtape*, 2001 WL 530551, at *6. Further, there is conflicting evidence as to whether defendants were unduly prejudiced, in terms of manufacturing and marketing decisions, by 3M's delay in bringing suit.

Based on those factual issues, the Court denies defendants' motion to bar 3M's claims based on laches. The Court notes, however, that even if 3M's claims are not barred by laches, 3M's ability to recover damages for its claims, should it ultimately prevail, may be limited by its delay in asserting its claims against defendants.

**VIII. 15 U.S.C. § 1120**

In its counterclaim, Central Products Company ("CPC") seeks to recover damages as a result of 3M's conduct under 15 U.S.C. § 1120.[5] CPC's claimed damages are the costs it incurred in producing documents and witnesses as a third party in *Shurtape*, which was the lawsuit 3M filed in 1998 against two other competitors.

In *Gilbert/Robinson*, the Eighth Circuit faced a similar claim for damages, stating, "we doubt whether infringement defense costs may be recovered under § 1120." *Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc.*, 989 F.2d 985, 991 n.5 (8th Cir. 1993) (citing *Wrist-Rocket Mfg. Co. v. Saunders Archery Co.*, 578 F.2d 727, 734 (8th Cir. 1978); *Blue Bell, Inc. v. Jaymar-Ruby, Inc.*, 497 F.2d 433, 439 (2d Cir. 1974)). The court

---

[5] Under 15 U.S.C. § 1120, "[a]ny person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof."

based its reasoning on the existence of § 1117, which allows attorneys' fees to be awarded to the prevailing party in an infringement suit in exceptional cases, and stated that a § 1120 damage claim "may not supplant the court's carefully circumscribed discretion to award fees under § 1117." *Id.* (citing *Louis Ender, Inc. v. Gen. Foods Corp.*, 467 F.2d 327, 330-31 (2d Cir.1972) (cost of defending trademark owner's unfair competition claim in state court not recoverable under § 1120).

The Court finds the Court of Appeals' analysis on this point to be persuasive and binding. The Court holds that a party may not recover attorneys' fees under 15 U.S.C. § 1120. Accordingly, the Court dismisses CPC's claim for damages under 15 U.S.C. § 120.

This case will be placed on the Court's next available trial calendar.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for partial summary judgment [Docket No. 33] is **GRANTED IN PART** and **DENIED IN PART** as follows:

a. Plaintiff's Motion for Summary Judgment on the affirmative defense of fraud is **GRANTED**. The affirmative defense of fraud is **DISMISSED WITH PREJUDICE**.

b. Plaintiff's Motion for Summary Judgment on the affirmative defense of functionality is **DENIED**.

c. Plaintiff's Motion for Summary Judgment on CPC's Counterclaim under 15 U.S.C. § 1120 is **GRANTED**. This counterclaim is **DISMISSED WITH PREJUDICE**.

2. Defendants' motion for summary judgment [Docket No. 31] is **DENIED**.

DATED: March 24, 2006
at Minneapolis, Minnesota.

s/ John R. Tunheim
JOHN R. TUNHEIM
United States District Judge